IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | 1:23-CR-43-RP-2 |
| (2) MEGHAN INYANG, | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant Meghan Inyang's ("Inyang") motion to suppress evidence. (Dkt. 271). The United States of America (the "Government") filed a response in opposition to the motion. (Dkt. 273). The Court held a hearing on the motion on May 24, 2024. (Min. Entry, Dkt. 278). Having considered the parties' briefing, the stipulated facts and arguments presented at the hearing, and the relevant law, the Court will deny the motion to suppress.

### I. BACKGROUND

#### A. Procedural Background

In March 2023, Inyang was charged alongside six co-defendants[1] in a 77-count indictment with: one count of Conspiracy to Commit Fraud in violation of 18 U.S.C. § 1349; one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h); three counts of Wire Fraud in violation of 18 U.S.C. § 1343; six counts of Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2); and six counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. The Government alleges that from January 2018 through December 2021, Inyang was engaged in a conspiracy to claim fraudulent tax refunds using the stolen identities of accountants and taxpayers by filing at least 371 false tax returns claiming over $111 million in refunds from the IRS. The

---

[1] Inyang's co-defendants are Abraham Yusuff (1), Christopher Eduardo (3), Christian Mathurin (4), Dillon Anozie (5), Babajide Ogunbanjo (6), and Aydin Mammadov (7).

Government alleges that Inyang and others obtained prepaid debit cards that were to be used to receive the fraudulent refunds and that she and others laundered the funds by purchasing, among other things, money orders. Inyang and her co-conspirators then allegedly used the prepaid debit cards and money orders to purchase designer clothing, home renovation materials, and used cars at auction. The United States also alleges that Inyang and others kept or received money orders purchased with the fraudulent refunds as their share of the illegal proceeds. (Indictment, Dkt. 3).

All six of Inyang's co-defendants pled guilty. (Dkts. 164, 177, 188, 205, 214, 278).[2] In the instant motion, Inyang seeks to suppress evidence discovered through an early-morning search of co-defendant Abraham Yusuff's ("Yusuff") one-bedroom apartment, in which she was an overnight guest. (Mot., Dkt. 271). The Government opposes the motion to suppress on the basis that Inyang was an overnight guest at a location for which there was a valid search warrant. (Resp., Dkt. 273).

### B. The Search of Yusuff's Apartment

On July 27, 2021, Special Agent Elisa Attaway ("Special Agent Attaway") of the Internal Revenue Service Criminal Investigation presented an application for a search warrant, supporting affidavit, and attachments to United States Magistrate Judge Susan Hightower. (Ex. A to Mot. Suppress, Dkt. 271-1, at 1–30). After finding probable cause, Magistrate Judge Hightower signed a search warrant (the "Warrant") authorizing the Government to search the following property:

**DESCRIPTION OF PREMISES TO BE SEARCHED**

<u>670 Louis Henna, Apt 1904, Round Rock, Texas 78664</u>

> The apartment leased by Christianah Gbadeoyelakin, but believed to be occupied by ABRAHAM YUSUFF, is located at The Regency Dell Ranch apartment complex, 670 Louis Henna, Apt 1904, Round Rock, Texas 78664. . . . Vehicles registered to YUSSUF [sic] including the 2015 Grey BMW 535I with license plate KYX6182 and 2016 Red BMW 650 with license plate NJD4903. . . .

---

[2] Inyang entered a conditional guilty plea on May 29, 2024. (Min. Entry, Dkt. 295). Her guilty plea is conditional on her right to appeal the instant order denying her motion to suppress.

**ITEMS TO BE SEIZED**

> The following described items and records to be seized (also described in the affidavit, which is herein incorporated to this warrant by reference) are those documents and other evidence of transactions that took place from January 1, 2015 to present, including tax returns for tax years 2017, 2018, 2019, and 2020 that relate to the planning, preparation, or execution of a scheme to submit fraudulent tax returns to the IRS, the acquisition or use of the means of identification of other persons, and the disposition of tax refunds issued by or from the IRS, to include:
>
> . . . . For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):
>
> . . . . The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware. . . .

(*Id.*; *see also* Ex. B to Mot. Suppress, Dkt. 271-1, at 32–33). The Warrant "permit[s] seizing, imaging, or otherwise copying electronic devices and storage media that reasonably appear to contain some or all of the evidence described in the warrant," and "authorize[s] a later review of the media or information consistent with the warrant." (Ex. A to Mot. Suppress, Dkt. 271-1, at 24–25).

The parties stipulated to the following facts at the hearing on May 24, 2024. (Min. Entry, Dkt. 278). At approximately 7:20 am on July 28, 2021, special agents executed the Warrant at Yusuff's one-bedroom, one-bath apartment. Both Inyang and Yusuff were present. Inyang was an overnight guest in the apartment. Inyang was initially covered only by a blanket, and then put clothing on afterwards. At least three devices belonging to Inyang were found on a nightstand in the bedroom. At some point, Inyang identified these as her devices. Special agents seized Inyang's

iPhone and iPad,[3] among other items. At a later date, Inyang's iPhone and iPad were searched by the Government.

## II. LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that search warrants issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. An affidavit supporting a warrant carries a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In reviewing a motion to suppress, courts "engage in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule[4] applies; and (2) whether the warrant was supported by probable cause." *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). "Principles of judicial restraint and precedent dictate that, in most cases, [courts] should not reach the probable cause issue if a decision on the admissibility of evidence under the good-faith exception of *Leon* will resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988). "The only instances in which this maxim should not be followed are those in which the resolution of a 'novel question of law . . . is necessary to guide future action by law enforcement officers and magistrates.'" *Id.* at 820–21 (quoting *Illinois v. Gates*, 462 U.S 213, 264 (White, J., concurring in the judgment)).

---

[3] Inyang alleges that she did not consent to the seizure of her devices. There is no need to resolve the issue of whether Inyang consented for purposes of this order, as the Warrant allowed the Government to search devices seized pursuant to it.

[4] "When government officials conduct a search in violation of the Fourth Amendment, prosecutors are barred from introducing evidence obtained in the unlawful search at trial." *United States v. Aguilar*, 973 F.3d 445, 449 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1102 (2021). This judicially-created remedy—designed to "safeguard Fourth Amendment rights generally through its deterrent effect"—is known as the exclusionary rule. *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2550 (2020) (cleaned up).

The good faith exception bars the application of the exclusionary rule to evidence obtained pursuant to a warrant if law enforcement officers acted under an objectively reasonable, good faith belief that the search warrant was valid. *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (citations omitted). The burden of demonstrating the inapplicability of the good faith exception rests with the defendant, who must establish: "(1) a knowing or reckless falsehood by omission or commission; (2) that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant; and that (3) [t]he omitted material [is] . . . dispositive, so that if the omitted fact were included, there would not be probable cause." *United States v. Jarman*, 847 F.3d 259, 264–65 (5th Cir. 2017) (quoting *Robinson*, 741 F.3d at 595). The good-faith exception does not apply if the judge issuing the warrant was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005); *United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002). An affidavit made negligently or through innocent error is insufficient to prevent a finding of good faith. *Franks*, 438 U.S. at 171.

### III. DISCUSSION

**A. The Warrant Applies to the Search and Seizure of Inyang's iPhone and iPad**

The Court first determines that the Warrant covered the search and seizure of Inyang's iPhone and iPad. Inyang argues that the search of her iPhone and iPad exceeded the scope of the warrant, because she views the Warrant as being directed solely at Yusuff and his property. (Mot., Dkt. 271, at 9–12). In response, the Government argues that the Warrant covers a locality: the one-bedroom apartment in which Yusuff was living. (Resp., Dkt. 273, at 8). The Court agrees with the Government.

The Fourth Amendment requires that a warrant describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Warrant authorizes

5

the search of the apartment in which Yusuff was residing, located at 670 Louis Henna, Apt 1904, Round Rock, Texas 78664. (Ex. A to Mot. Suppress, Dkt. 271-1, at 1–30; *see also* Ex. B to Mot. Suppress, Dkt. 271-1, at 32–33). The Warrant authorized the search of an apartment of a suspected member, Yusuff, of a multi-defendant conspiracy. In the words of Special Agent Attaway, whose affidavit supported the application for the Warrant:

> . . . . In my training and experience this scheme is elaborate, calculated, and takes many players to orchestrate. The evidence described above shows that computers and other electronic devices have been and continue to be a large part of carrying out this scheme. Evidence shows that YUSUFF worked together with other known and unknown co-conspirators to carry out the scheme and probable cause exists that evidence of this scheme can be found at 89 Jan Lane, Georgetown, Texas 78626 and 670 Louis Henna Blvd, Apt 1904, Round Rock, Texas 78664. A search warrant will ensure records and evidence are not destroyed. . . .

(Ex. A to Mot. Suppress, Dkt. 271-1, at 15–16). Thus, the Warrant authorized the search of Yusuff's apartment as a whole, with the understanding that he was working with unknown others to further this conspiracy.

Here, there is no dispute that Inyang was an overnight visitor at Yusuff's apartment. (Min. Entry, Dkt. 278). "'[A]ny container situated within residential premises which is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.'" *United States v. Giwa*, 831 F.2d 538, 543–44 (5th Cir. 1987) (quoting *United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987)). While persons whose relationship to a location can only be categorized as a "mere visitor" or "passerby" are not considered to be within the scope of a search warrant, "an overnight visitor" represents a stronger "relationship between the person and the place," and accordingly, possessions belonging to overnight visitors fall "within the scope of the premises search warrant." *Id.* at 545 (upholding search of items belonging to overnight visitor found in apartment that was the subject of a premises search warrant).

6

Here, the Warrant authorized the special agents to seize all items that fell within the Warrant, which included cell phones and other electronic devices, independent of ownership. It does not matter that Inyang was not named in the Warrant. Because Inyang was undisputably an overnight visitor at the apartment that was the subject of the Warrant, which authorized the search and seizure of electronic devices present in the location, the Warrant covered the seizure of Inyang's iPhone and iPad.[5] Accordingly, the seizure of Inyang's iPhone and iPad was within the scope of the Warrant.

Inyang also argues that even if the Warrant was valid, the later search of her devices exceeded the scope of the Warrant. (Mot., Dkt. 271, at 12–14). But the Warrant "permit[s] seizing, imaging, or otherwise copying electronic devices and storage media that reasonably appear to contain some or all of the evidence described in the warrant," and "authorize[s] a later review of the media or information consistent with the warrant." (Ex. A to Mot. Suppress, Dkt. 271-1, at 23–24). And, as the Government points out, Federal Rule of Criminal Procedure 41 expressly provides that "[u]nless otherwise specified," a warrant seeking electronically stored information "authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. Proc. 41(e)(2)(B). Further, "the legality of a search pursuant to a valid warrant is not suspect-specific," so for the same reasons that the seizure of Inyang's iPhone and iPad was covered by the Warrant, so, too, was the later search of her devices. *United States v. Baez*, 983 F.3d 1029, 1041 (8th Cir. 2020); *cf. Giwa*, 831 F.2d at 544 ("[S]pecial concerns arise when the items to be searched belong to visitors, and not occupants, of the premises. . . Such searches may become personal searches outside the scope of the premises search warrant requiring independent probable cause."). Accordingly, the later search of Inyang's iPhone and iPad was also constitutional pursuant to the Warrant.

---

[5] Inyang's electronic devices were found on the nightstand in the common bedroom, so there is no need to analyze whether they were on her person.

Inyang also argues that special considerations exist in the context of cellphones which render the Warrant invalid. (Mot., Dkt. 271, at 14–15). The Supreme Court has indeed found that modern "cell phones" are in fact "minicomputers" with "immense storage capacity" that "place vast quantities of personal information literally in the hands of individuals." *Riley v. California*, 573 U.S. 373, 386, 393 (2014) (unanimous opinion). However, *Riley* stands for the proposition that officers must have a warrant to search a cellphone—which the special agents had in this case, and which the Court has just found was valid. *See* 573 U.S. at 403. Accordingly, the Warrant does not fail because it authorizes the seizure and later search of electronic devices found at the apartment during the execution of a premises search warrant.

### B. The Good Faith Exception

Having determined that Inyang's iPhone and iPad were covered by the Warrant, the Court next turns to the first step of the motion to suppress inquiry: whether the *Leon* good faith exception applies. In *Leon*, the United States Supreme Court held that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the warrant was unsupported by probable cause." *Laury*, 985 F.2d at 1311 (5th Cir. 1993) (citations omitted). However, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922–23. The Supreme Court posited four circumstances in which that would be the case:

> [I]f the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [if] the issuing magistrate wholly abandoned his judicial role . . . [if the] affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [or if] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the

        things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (citations omitted). Inyang has not argued that any of these four circumstances was present here, and even if she had so argued, the Court cannot find anything in the record to suggest that one of them does. The burden of demonstrating the inapplicability of the good faith exception rests with the defendant. *Jarman*, 847 F.3d at 264–65. Inyang made no arguments as to the inapplicability of the good faith exception in this context.[6]

        The Court further finds that the special agents acted under an objectively reasonable, good faith belief that the search warrant was valid because it was issued by a federal magistrate judge. *See Craig*, 861 F.2d at 821 ("Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant.") (citing *Leon*, 468 U.S. at 922); *Franks*, 438 U.S. at 171 (an affidavit supporting a warrant carries a presumption of validity); *see also United States v. Morton*, No. 19-10842, 2022 WL 3591841, at *4 (5th Cir. Aug. 22, 2022) ("Judgment calls in close cases are precisely when the good-faith rule prevents suppression based on after-the-fact reassessment of a probable-cause determination.") (citing *Leon*, 468 U.S. at 914). Accordingly, the Court finds that the good faith exception applies. Because the Court finds that the good faith exception applies, the Court does not reach the issue of whether probable cause existed. *See Laury*, 985 F.2d at 1311. Therefore, the evidence found on Inyang's iPhone and iPad pursuant to the Warrant should not be suppressed. Accordingly, the Court will deny Inyang's motion to suppress.

---

[6] At the motions hearing, Inyang's counsel argued that the search and seizure went beyond the scope of the Warrant and thus that the good faith exception did not apply because there was no valid warrant.

## IV. CONCLUSION

For the above reasons, **IT IS ORDERED** that Inyang's motion to suppress, (Dkt. 271), is **DENIED**.

**SIGNED** on May 30, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE